# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH FRANKLIN MONKAM NITCHEU, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>BIT DIGITAL, INC., MIN HU, and ERKE HUANG,<br><br>　　　　　　　　Defendants. | Case No. 1:21-cv-02262<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>Jury Trial Demanded |

Plaintiff Joseph Franklin Monkam Nitcheu ("Plaintiff"), by and through his attorneys, alleges upon personal knowledge as to his own acts, and upon information and belief as to all other matters, based upon the investigation conducted by and through his attorneys, which included, among other things, a review of documents filed by Defendants (as defined below) with the United States Securities and Exchange Commission (the "SEC"), news reports, press releases issued by Defendants, and other publicly available documents, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.　　This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Bit Digital, Inc. ("Bit Digital" or the "Company") securities between December 21, 2020 and January 11, 2021, inclusive (the "Class Period"). This action is brought on behalf of the Class for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

2. Bit Digital is a holding company that purports to engage in the bitcoin mining business through its wholly owned subsidiaries in U.S. and Hong Kong.

3. At approximately 2:00 p.m. Eastern on January 11, 2021,[1] analyst J Capital Research issued a research report alleging, among other things, that Bit Digital operates "a fake crypto currency business" "designed to steal funds from investors." Though the Company claims "it was operating 22,869 bitcoin miners in China," J Capital wrote that this "is simply not possible" and stated that "[w]e verified with local governments supposedly hosting the BTBT mining operation that there are no bitcoin miners there."

4. On this news, Bit Digital's stock price fell $6.27 per share, or 25%, to close at $18.76 per share on January 11, 2021, on unusually heavy trading volume.

5. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business. Specifically, Defendants failed to disclose to investors: (1) that Bit Digital overstated the extent of its a bitcoin mining operation; and (2) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## JURISDICTION AND VENUE

6. The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and § 27 of the Exchange Act, 15 U.S.C. § 78aa.

8. This Court has jurisdiction over each Defendant named herein because each

---

[1] *See, e.g.*, https://twitter.com/JCap_Research/status/1348634405749870605 ("Publishing on a crypto scam today at 2 pm. Watch this space.") (last visited on March 10, 2021).

Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b), as the Company's principal executive officers are located within this District. Moreover, Bit Digital's securities trade on the NASDAQ stock exchange, which is located within this District, and the Company conducts substantial business here. Furthermore, Bit Digital's agent for service of process is Corporation Service Company, 19 West 44th Street, Suite 201, New York, NY 10036.

10. In connection with the acts, omissions, conduct and other wrongs in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

11. Plaintiff Joseph Franklin Monkam Nitcheu acquired and held shares of Bit Digital at artificially inflated prices during the class period, and has been damaged by the revelation of the Company's material misrepresentations and material omissions.

12. Defendant Bit Digital is a holding company that purports to engage in the bitcoin mining business through its wholly owned subsidiaries in U.S. and Hong Kong. Bit Digital securities trade on the NASDAQ stock exchange under the ticker "BTBT." The Company's headquarters are located at 33 Irving Place, New York, NY 10003. Bit Digital is incorporated under the laws of the Cayman Islands.

13. Defendant Min Hu has served as Bit Digital's Chief Executive Officer at all relevant times. On February 3, 2021, the Company announced that Mr. Hu had been removed as Chief Executive Officer, but would remain an independent director of the Company.

14. Defendant Erke Huang has served as Bit Digital's Chief Financial Officer at all relevant times. Since Mr. Hu's removal as Chief Executive Officer, Mr. Huang has served as Interim Chief Executive Officer. Mr. Huang also serves on the Company's Board of Directors.

15. Collectively, Defendants Hu and Huang are referred to throughout this complaint as the "Individual Defendants."

16. The Individual Defendants, because of their positions at the Company, possessed the power and authority to control the content and form of the Company's annual reports, quarterly reports, press releases, investor presentations, and other materials provided to the SEC, securities analysts, money and portfolio managers and investors, *i.e.*, the market. The Individual Defendants authorized the publication of the documents, presentations, and materials alleged herein to be misleading prior to its issuance and had the ability and opportunity to prevent the issuance of these false statements or to cause them to be corrected. Because of their position with the Company and access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

17. Bit Digital is a holding company that purports to engage in the bitcoin mining business through its wholly owned subsidiaries in U.S. and Hong Kong.

## MATERIALLY FALSE AND MISLEADING STATEMENTS

18. The Class Period begins on December 21, 2020. On that day, the Company

announced its revised third quarter 2020 financial results in a press release that stated:

**Financial Highlights for the Third Quarter 2020**

- Revenue from bitcoin mining business was $7.91 million.

- The number of bitcoins earned from bitcoin mining business was 739.51.

- The number of miners was 22,869, with 16,865 miners acquired in the third quarter 2020.

- The net income from continuing operations of $0.10 million was all from bitcoin mining business, compared to the net loss of $1.79 million for the third quarter 2019.

- The net loss from discontinued operations was $0.10 million for the third quarter 2020, as we disposed of peer-to-peer and car rental business in the PRC, compared with the net loss from discontinued operations of $1.22 million for the third quarter 2019.

- The net income was $54 and the earnings per share was $0.00 for the third quarter 2020, compared with the net loss of $3.0 million and loss per share of $0.20 for the same period last year.

**Financial Highlights for the Nine Months 2020**

- Revenue from bitcoin mining business was $8.60 million.

- The number of bitcoins earned from bitcoin mining business was 814.23.

- The number of miners was 22,869, all miners acquired in the nine months 2020.
- The net loss from continuing operations of $0.73 million was all from bitcoin mining business, compared to $1.79 million for the nine months 2019.

- The net loss from discontinued operations was $3.83 million for the nine months 2020, as we provided full impairment on assets for our discontinued peer-to-peer and car rental business in the PRC, compared with the net loss from discontinued operations of $7.68 million for the nine months 2019.

- The net loss was $4.56 million and the loss per share was $0.18 for the nine months 2020, compared with $9.47 million and $0.63 for the same period last year.

\*   \*   \*

As of September 30, 2020, our hash rate reached 1,250 Ph/s. In December 2020, we closed an asset acquisition of 17,996 bitcoin miners with total hash rate of

1,003.5 Ph/s, worth of $13,902,742, at a consideration of issuance of an aggregate of 4,344,711 common shares, par value $0.01 per share, at a per share price of $3.20. The closing of the acquisition increased the Company's total hash rate by approximately 1,003.5 Ph/s, from 1,250 Ph/s to 2,253.5 Ph/s. The average energy efficiency of these miners is 47.45 (+/-5%) joules per terahash (J/TH). With these miners being fully deployed, the total energy efficiency is expected to be decreased from 61.88 (+/-5%) J/TH to 55.33 (+/-5%) by 10.59%, consuming 124 megawatts of power. The total 17,996 miners acquired in December 2020 were comprised of 7,025 Antminer S17+, 9,110 Antminer T17, 195 Antminer S17E, 32 Antminer S17Pro, 105 Antminer S19Pro, 1,429 Whatsminer M20S and 100 Whatsminer M31S.

As of the date of this Report, we had a total of 40,865 miners, including 7,025 Antminer S17+, 195 Antminer S17E, 32 Antminer S17Pro, 105 Antminer S19Pro, 800 Antminer T3, 9,110 Antminer T17, 256 Antminer T17+, 2,200 Whatsminer M10, 4,125 Whatsminer M20S, 16,917 Whatsminer M21S and 100 Whatsminer M31S, spreading over Xinjiang, Inner Mongolia and Sichuan Provinces, PRC and Texas and Nebraska in the United States.

By December 18, 2020, we have earned an aggregation of 1,331.2 bitcoins and recognized unaudited revenues of approximately $16.50 million.

19.     The statements identified above were materially false and misleading and failed to disclose material facts about the Company's business, operations, and prospects. As alleged herein, Defendants misled investors by misrepresenting and/or failing to disclose that: (1) that Bit Digital overstated the extent of its a bitcoin mining operation; and (2) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

20.     The statements described in ¶ 18 were materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects.

## THE TRUTH EMERGES

21.     During the trading day on January 11, 2021, at approximately 2:00 p.m., analyst J Capital Research issued a research report alleging, among other things, that Bit Digital operates "a fake crypto currency business" "designed to steal funds from investors." Although the Company claims "it was operating 22,869 bitcoin miners in China," J Capital alleged that this "is simply not

possible" and stated that "[w]e verified with local governments supposedly hosting the BTBT mining operation that there are no bitcoin miners there." Specifically, the J Capital report stated:

> **Fraudulent "mining" operations**
>
> We think the bitcoin business BTBT discloses is completely fraudulent.
>
> In September 2020, BTBT changed its company name from Golden Bull Limited to Bit Digital, Inc. and its ticker from DNJR to BTBT. It announced it would be going into bitcoin mining. But without a Chinese-registered entity, that would not be legal. Companies are required to show a registration document from a domestic legal entity before they can sign a lease or a hosting contract. Yet the company clearly claims that it both operates and leases mining facilities in China[.]
>
> BTBT disclosed that, until September 2020, all its bitcoin mining operations were in China.
>
> "Our mining operations are in Wuhai, Zhundong, Xinlinhot and Sichuan, China."
>
> In China, you have to register with the government to have a data center, and local governments have records of all data centers and bitcoin mining operations. But J Capital contacted the governments of Wuhai, Inner Mongolia, Zhundong, Xinjiang, and Xilinhot, Inner Mongolia. In telephone calls, local government officials of each locality told us they had no bitcoin mining operations and had not heard of Bit Digital.
>
> "Big data, crypto currency, cloud computing parks or data centers—none of these have registered here," said an official of Zhundong.
>
> "There is no bitcoin center here," said an official of Xilinhot.
>
> "There's no bitcoin center here," said an official of Wuhai. "I've never heard of Bit Digital."
>
> \*   \*   \*
>
> **Fake purchases?**
>
> The company says it has been investing in bitcoin miners and uses these miners to mine on behalf of customers: "We will continue to invest in the miners to increase the hash rate capacity, as a percentage of total computing power contributed by all mining pool participants. Our mining operations are distributed in Xinjiang, Inner Mongolia and Sichuan Provinces PRC, and in Nebraska and

> Texas, United States which was newly launched in September 2020." But how can auditors determine whether mining activity is being conducted?
>
> We spoke with all the major manufacturers in China of bitcoin mining equipment.None had heard of BTBT.
>
> One employee of MicroBT, a Shenzhen-based company from which BTBT reported buying 21,713 machines in 2020, told J Capital that BTBT had not purchased equipment from them. "I have never heard of Bit Digital," he said. We provided the name of the company's former VIE with no better result. Three otherMicroBT employees said they were not permitted to discuss customers.
>
> Bitmain, from which BTBT said it bought 256 miners in the first nine months of 2020, drew a blank when we inquired about BTBT. Bitmain supplies roughly 65% of the world market for miners and is unlikely not to know of a company that has purchased more than 41,000 machines in one year—even if the machines were bought second-hand.
>
> We suspect that the capex spent in the first nine months of 2020--$18.8 mln—wassimply stolen.

22.     On this news, the price of Bit Digital shares fell $6.27 per share, or 25%, to close at $18.76 per share on January 11, 2021, on unusually heavy trading volume.

## POST-CLASS PERIOD DEVELOPMENTS

23.     On February 3, 2021, Bit Digital announced that the Board of Directors had removed Defendant Hu as Chief Executive Officer, but that he would remain an independent director of the Company. The Company also announced that it had accepted the resignation of Hong Yu as Chief Strategy Officer and director. The Company announced that Defendant Huang would serve, in addition to his role as Chief Financial Officer, as Interim Chief Executive Officer while Bit Digital searched for a new CEO.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired Bit Digital securities between December 21, 2020 and January 11, 2021, inclusive.

Excluded from the Class are Defendants, directors and officers of the Company, as well as their families and affiliates.

25. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Throughout the Class Period, Bit Digital's shares actively traded on the NASDAQ stock exchange. Although the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Bit Digital shares were publicly traded during the Class Period on the NASDAQ stock exchange. Record owners and other members of the Class may be identified from records maintained by Bit Digital or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

26. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

   a. Whether Defendants violated the Exchange Act;

   b. Whether Defendants omitted and/or misrepresented material facts;

   c. Whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

   d. Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

   e. Whether the price of the Company's securities was artificially inflated; and

   f. The extent of damage sustained by Class members and the appropriate measure of damages.

27. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class

sustained damages from Defendants' wrongful conduct alleged herein.

28.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

29.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FRAUD ON THE MARKET

30.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things:

a. Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b. The omissions and misrepresentations were material;

c. The Company's securities traded in efficient markets;

d. The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

e. Plaintiff and other members of the class purchased the Company's securities between the time Defendants misrepresented or failed to disclose material facts and the time that the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

31.     At all relevant times, the markets for the Company's securities were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC; and (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures such as

communications with the financial press, securities analysts, and other similar reporting services. Plaintiff and the Class relied on the price of the Company's securities, which reflected all information in the market, including the misstatements by Defendants.

## NO SAFE HARBOR

32. The statutory safe harbor provided for forward-looking statements under certain conditions does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as forward-looking statements when made.

33. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

## LOSS CAUSATION

34. During the trading day on January 11, 2021, J Capital published the report alleged herein. On this news, the price of Bit Digital shares fell $6.27 per share, or 25%, to close at $18.76 per share on January 11, 2021, on unusually heavy trading volume.

35. These revelations contradicted statements made by Defendants during the Class Period and were a causal element of the concurrent decline in the Company's share price.

## SCIENTER ALLEGATIONS

36. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Bit Digital, their control over,

and/or receipt and/or modification of Bit Digital's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Bit Digital, participated in the fraudulent scheme alleged herein.

### Count One
### Violations of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder
### (Against All Defendants)

37. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

38. During the Class Period, Defendant Bit Digital and the Individual Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

39. Defendant Bit Digital and the Individual Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the class period.

40. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's securities. Plaintiff and the Class would not have purchased the Company's securities at the price paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

**Count Two**
**Violation of § 20(a) of the Exchange Act**
**(Against the Individual Defendants)**

41.  Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

42.  The Individual Defendants acted as controlling persons of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions at the Company, the Individual Defendants had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. The Individual Defendants were provided with or had unlimited access to the documents described above that contained statements alleged by Plaintiff to be false or misleading both prior to and immediately after their publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)  determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

(b)  awarding compensatory and punitive damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon.

(c) awarding Plaintiff and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

(d) awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

March 16, 2021

Respectfully submitted,

*/s/ Jeffrey C. Block*
Jeffrey C. Block
Stephen J. Teti
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
(617) 507-6020 fax
jeff@blockleviton.com
steti@blockleviton.com

*Attorneys for Plaintiff and Proposed Lead Counsel*